**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RONALD HORTON, individually and on**
**behalf of all others similarly situated,**

     **Plaintiffs,**

**v.**                                                                        **Case No.  8:13-cv-3176-T-30MAP**

**WOODMAN LABS, INC.,**
**doing business as GoPro,**

     **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Woodman Labs, Inc's Motion

to Dismiss Complaint (Dkt. 12) and Plaintiff Ronald Horton's Response in Opposition (Dkt.

18).  The Court, having reviewed the motion, response, and being otherwise advised in the

premises, concludes that the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiff Ronald Horton brings this putative class action against Defendant GoPro, Inc.

(formerly known as Woodman Labs, Inc., d/b/a GoPro) alleging functionality issues

experienced with the Hero3 video camera, manufactured by GoPro.  Horton alleges that, due

to problems with the Hero3, it does not operate properly or as advertised, and is not suitable

for the ordinary purposes for which it is used.  Those problems include, but are not limited

to, the following:

a.    When the Hero3 is set to operate [sic] "looping mode" and once the internal memory card in the Hero3 is full, the Hero3 displays the message that [sic] "Not Enough SD Card Space".  The Hero3 is advertised to continue recording by overwriting the oldest data on the memory card.  This feature does not operate as advertised.

b.    When power is interrupted, the Hero3's internal clock sometimes uses and displays the incorrect date and time, thereby mislabeling the time when video recording occurred.

c.    The Hero3 unpredictably turns off during recording.

(Dkt. 1 at ¶3).  These problems render the camera unfit for surveillance, transit data collection device, or other general uninterrupted video recording.

The complaint alleges that GoPro acknowledged in a segment on 60 Minutes, a CBS News program, that GoPro released the Hero3 "before the software was fully, fully, fully mature.  And we didn't know it."  *Id.* at ¶20c.  Purchasers of the Hero3 have unsuccessfully attempted to resolve the camera's problems with software updates or by replacing the memory card.  GoPro's attempts at repairing or replacing the purchasers' Hero3 cameras have been unsuccessful; the Hero3 continues to suffer from the same failures.

GoPro offers an express written warranty on the Hero3.  The warranty provides in relevant part:

GoPro products and accessories are guaranteed against manufacturing defects one (1) year from the original date of purchase.  GoPro's sole obligation in the event of such defects during this period is to repair or replace the defective part or product with a comparable part or product at GoPro's sole discretion.

*Id.* at ¶23.

With respect to Horton, he purchased his GoPro Hero3 Silver from Wine Country Motor Sports on or about August 16, 2013. Horton purchased the Hero3 for in-car motor sports video recording. Horton purchased several different memory cards for his Hero3. Horton observed that his Hero3 unpredictably turned off during recording. Horton also observed that after placing his Hero3 in looping mode, the camera indicated "Not Enough SD Card Space," meaning that the card was unable to record any additional video. As a result, when the Hero3 was in looping mode, it did not actually provide continuous video recording, nor did it overwrite older video on the card. Horton further observed that, after the Hero3's power was interrupted, the Hero3's clock failed to function properly and assigned the incorrect date and time to his video recordings.

Horton was unable to resolve the problems associated with his Hero3. Shortly after he purchased the Hero3, Horton contacted GoPro via its website, but never received a response.

Horton asserts three claims in this action on behalf of himself and a putative nationwide class who purchased GoPro Hero3 cameras, asserting: (1) breach of express warranty; (2) breach of implied warranty; and (3) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

GoPro now moves to dismiss the complaint for various reasons. As discussed below, GoPro's motion is granted in part and denied in part.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**DISCUSSION**

**I.    Standing**

GoPro initially argues that Horton lacks constitutional standing to assert class claims on behalf of all users of Hero3 cameras. GoPro points out that Horton seeks to represent a national class of persons, "who purchased GoPro Hero3 cameras," including two models of cameras Horton did not purchase. GoPro contends that Horton can only assert claims for the product he purchased - the Hero3 Silver Edition. GoPro sold three distinct models under the Hero3 line: Hero3 Black Edition, Hero3 Silver Edition, and the Hero3 White Edition.

Horton counters that GoPro's standing argument is premature. Horton argues that the allegations are sufficient to establish standing, at this stage, because the problems outlined

in the complaint associated with the Hero3 apply to the three Hero3 models, not just the Hero3 Silver Edition. The Court agrees that GoPro's standing argument is premature at this point.

Whether the named plaintiff has standing to sue is a threshold question in any class action case; thus, "any analysis of class certification must begin with the issue of standing." *See Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987); *see also Prado-Steiman v. Bush,* 221 F.3d 1266, 1279-80 (11th Cir. 2000). The Eleventh Circuit has noted that standing is a "fact-specific inquiry." *Murray v. Auslander*, 244 F.3d 807, 810-11 (11th Cir. 2001). A review of relevant case law within this jurisdiction also reveals that this issue is typically assessed at the class certification stage.

GoPro implies that there are material differences between the three Hero3 models. These purported factual differences cannot be considered at this stage. The complaint alleges that all Hero3 cameras experience the same three problems associated with the looping mode, time display, and unexpected shutdown. These allegations are sufficient at this stage to establish Horton's standing. Accordingly, GoPro's motion to dismiss is denied with respect to its standing argument.

## II.     Failure to State a Claim under Rule 12(b)(6)

### A.     Express Warranty Claim

GoPro makes two arguments with respect to Horton's express warranty claim: Horton has not adequately alleged presuit notice and Horton lacks privity with GoPro. Both arguments fail at the motion to dismiss stage.

1.      Presuit notice

Under Florida's Uniform Commercial Code, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of [sic] breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). A primary purpose of requiring a buyer to notify the manufacturer of a purported breach is so that the manufacturer receives an opportunity to remedy the defects itself. *See Gen. Matters, Inc. v. Paramount Canning Co.,* 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980) (stating that notice provisions enable sellers or manufacturers "to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss").

GoPro argues that Horton asserts only conclusory allegations regarding notice. A review of the complaint demonstrates that Horton alleges notice in two places. Initially, Horton states that "shortly after purchasing the Hero3, Plaintiff contacted GoPro via its website, but never received a response." (Dkt. 1 at ¶ 31). Later, Horton alleges that he "communicated with GoPro regarding the repair or replacement of his Hero3" and "GoPro's efforts to repair or replace Plaintiff's Hero3 were ineffective." *Id.* at ¶ 48. Although these allegations seem somewhat contradictory, the Court concludes that they are sufficient to establish notice at this stage. GoPro may engage in discovery on the issue of notice and, if appropriate, attack the truth of Horton's allegations regarding same at the summary judgment stage.

2.     Privity

Under Florida law, a written warranty is treated like a contract between the seller and the buyer.  *See David v. Am. Suzuki Motor Corp.,* 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009) (citation omitted).  As such, the terms of an express warranty may limit or foreclose the remedies available to the buyer.  *See id.* at 1318-19 (citation omitted).  A claim for breach of an express warranty generally requires the parties to have contractual privity.  *See Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.,* No. 8:09-cv-607-T-27MAP, 2010 WL 1223126, at *6 (M.D. Fla. Mar. 25, 2010).  However, Florida courts have relaxed the contractual privity requirement where the express warranty was intended to benefit subsequent owners. *See Mesa v. BMW of N. Am., LLC,* 904 So. 2d 450, 457-58 (Fla. 3d DCA 2005) (holding that the plaintiff, a subsequent purchaser who was not in privity of contract with the manufacturer, was entitled to enforce the terms of the manufacturer's warranty because the warranty extended to subsequent purchasers); *Fischetti v. Am. Isuzu Motors, Inc.,* 918 So. 2d 974, 976 (Fla. 4th DCA 2005) ("The manufacturer can hardly be heard to resurrect a common law requirement of privity when it has itself voluntarily provided a warranty that runs in favor of remote purchasers of its product.").

GoPro argues that Horton is not in privity with GoPro because he did not buy the camera directly from GoPro.  This argument lacks merit because the written warranty included in the packaging for the Hero3 camera extends to the end user of the product.  *See* Dkt. 1 at ¶ 23 ("GoPro products and accessories are guaranteed against manufacturing defects one (1) year from the original date of purchase.").

In sum, GoPro's motion to dismiss is denied with respect to Horton's express warranty claim.

B.     Implied Warranty Claim

Horton does not oppose dismissal of his implied warranty claim.  Accordingly, GoPro's motion to dismiss is granted with respect to the implied warranty claim and this claim will be dismissed with prejudice.

C.     FDUTPA Claim

GoPro argues that Horton's FDUTPA claim merely recasts his warranty claim.  The FDUTPA makes unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  A claim under FDUTPA applies to "unfair" or "deceptive" conduct and does not arise merely from an alleged breach of warranty or a breach of contract claim.  *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 n.2 (Fla. 2003) ; *Varnes v. Home Depot USA, Inc.*, No. 3:12-cv-622-J-99TJC-JBT, 2012 WL 5611055, at *1 (M.D. Fla. Nov. 15, 2012) (dismissing FDUPTA claim that "merely restates the allegations of his breach of contract and breach of warranty claims, without noting which facts show deceptive or unfair practices").

The Court agrees that the complaint fails to allege facts associated with GoPro's deceptive or unfair practices.  Horton alleges conclusory statements regarding GoPro's "unfair, unconscionable, or deceptive practices" but does not include facts that support these conclusory remarks other than the facts associated with the breach of express warranty claim.

Horton also refers vaguely to GoPro's "representations or misrepresentations about the use and functionality of the Hero3's features," without including any further details. Accordingly, GoPro's motion is granted with respect to the FDUPTA claim, without prejudice to Horton to amend his complaint to allege sufficient facts in support of this claim.

**III.     Shotgun Pleading**

GoPro points out in a footnote (Dkt. 12 at n. 3) that Horton's complaint is a shotgun pleading because the complaint contains several counts that incorporate by reference each allegation of the predecessor count. A shotgun pleading results in all of the counts but the first count containing irrelevant factual allegations and legal conclusions. Horton's amended complaint shall correct this pleading deficiency.

It is therefore ORDERED AND ADJUDGED that:

1.     Defendant Woodman Labs, Inc's Motion to Dismiss Complaint (Dkt. 12) is granted in part and denied in part as stated herein.

2.     Plaintiff's implied warranty claim (Count II of the complaint) is dismissed with prejudice.

3.     Plaintiff's FDUPTA claim (Count III of the complaint) is dismissed without prejudice. Plaintiff may file an amended complaint to state sufficient facts in support of a FDUPTA claim within fourteen (14) days of this Order.[1] If Plaintiff does not file an amended complaint during that time, Defendant shall

---

[1] If Plaintiff elects not to amend this claim, Plaintiff need not file an amended complaint solely to fix the current complaint's shotgun style.

file an answer to Count I of the current complaint within twenty-eight (28)

days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on April 2, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2013\13-cv-3176.mtdismiss-classaction.frm