**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

---

Ronald Horton,
individually and on behalf of all others similarly situated,

Plaintiff,

v.

GoPro, Inc.,

Defendant.

Civil Action No. 8:13-cv-3176-T-30MAP

**FIRST AMENDED**

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

---

Plaintiff, Ronald Horton, individually and on behalf of all others similarly situated, by and through the undersigned counsel, brings this first amended class action complaint against Defendant, GoPro, Inc. (formerly known as Woodman Labs, Inc.), doing business as GoPro (hereinafter GoPro), and in support thereof, states and avers the following:

**INTRODUCTION**

1. GoPro promotes itself as the world's leading manufacturer of "activity" video recording devices: compact, lightweight video cameras that may be worn by a human, installed on a vehicle, or linked to a computerized device or network.

2. Among several models of said devices, GoPro manufactures and sells the Hero3 video camera, which records video onto a memory card located inside the device.

3. Due to problems with the Hero3, it does not operate properly or as advertised, and it is not suitable for the ordinary purposes for which it is intended to be used. Those problems include, but are not limited to, the following:

   a. When the Hero3 is set to operate "looping mode" and once the internal memory card in the Hero3 is full, the Hero3 displays the message that

"Not Enough SD Card Space". The Hero3 is advertised to continue recording by overwriting the oldest data on the memory card. This feature does not operate as advertised.

b. When power is interrupted, the Hero3's internal clock sometimes uses and displays the incorrect date and time, thereby mislabeling the time when video recording occurred.

c. The Hero3 unpredictably turns off during recording.

4. If the Hero3 performed as GoPro represented or advertised, then it could be used for surveillance, or it could be used as a "transit data collection device," meaning a device that allows motorists or other vehicle operators to record occurrences during the use of their vehicles. For instance, the CBS News magazine program *60 Minutes* aired a story on GoPro cameras on November 10, 2013. That story recounted a "now infamous" incident where "motorcyclists in New York tangled with the driver of an SUV."[1]

5. GoPro knows or has reason to know that the Hero3's looping mode, date retention and uninterrupted recording features are desirable to purchasers, for applications including but not limited to use for surveillance or as a transit data collection device.

a. GoPro knows or has reason to know that the looping mode, date retention and uninterrupted recording features induce consumers to purchase the Hero3 camera.

b. GoPro knows or has reason to know that the Hero3's looping mode, date retention and uninterrupted recording features do not operate properly or as advertised.

---

[1] [1] The video is available on YouTube at https://www.youtube.com/watch?v=INfElroIKO0 (last visited April 12, 2014).

6. Because the Hero3 does not operate properly or as advertised, GoPro breaches warranties on the Hero3.

7. Because the Hero3 does not operate properly or as advertised, GoPro violates consumer protection laws of Florida and other states.

## PARTIES

8. Plaintiff Ronald Horton is a natural person and citizen residing in the City of Apollo Beach, Hillsborough County, Florida.

9. Defendant GoPro is a Delaware corporation with its principal place of business at or near 2450 Cabrillo Highway South, Suite 250, Half Moon Bay, California.

## JURISDICTION AND VENUE

10. GoPro conducts substantial business in Florida and throughout the United States in connection with the marketing and sale of the Hero3. This Court has jurisdiction over GoPro because it has intentionally availed itself of the markets and laws of the State of Florida.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the majority of class members are citizens of different states than GoPro and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the Tampa Division of the Middle District of Florida and a substantial part of the events at issue in this complaint occurred there.

## FACTUAL ALLEGATIONS

### A. General Allegations

13. GoPro claims that it is "maker of the world's most versatile and durable cameras" and that the Hero3 "makes it possible to capture and share your life like never before."

14. Notwithstanding such claims, the Hero3 does not work properly or as advertised, and it is not suitable for the ordinary purposes for which it is used.

15. Among other problems, the Hero3 does not have a properly functioning "looping mode."

a. In advertised specifications for the Hero3, as posted on the GoPro website and elsewhere, the "advanced features" of the Hero3 include "Looping Record (Video)."

b. The user manuals for the Hero3 state, "Looping Video mode allows you to record a continuously looping video that overwrites itself[.]"

c. After it is placed into looping mode and the memory card is full, the Hero3 does not reliably continue recording. Instead of overwriting the oldest video data on its memory card, the Hero3 indicates "Not Enough SD Card Space" and ceases recording.

16. When the Hero3 suffers sudden loss of power, its internal clock sometimes does not work correctly, using and displaying the incorrect date and time on recorded video.

17. Moreover, the Hero3 unpredictably turns off during recording.

18. Because of these problems, the camera is not suitable for surveillance, transit data collection device or other general uninterrupted video recording.

19. GoPro has issued multiple software updates for the Hero3, most recently update 3.0, which was released on or around July 29, 2013. Even after purchasers of the Hero3 install these updates, the Hero3 continues to have problems.

20. The CBS News magazine program *60 Minutes* aired a story on GoPro cameras on November 10, 2013. That story included an interview with Nick Woodman, the CEO of GoPro.

a. In that story, *60 Minutes* mentioned "[t]he new model camera Woodman released in 2012." This is a reference to the Hero3, which GoPro released in late 2012.

b. Regarding this model, *60 Minutes* reported, "Some customers complained that their cameras suddenly stopped working. GoPro had to scramble to fix the problem with software updates."

c. Responding to this information in his interview, Mr. Woodman said, "We launched a product before the software was fully, fully, fully mature. And we didn't know it."

21. When purchasers informed about Hero3's failures in looping mode, GoPro has attributed these failures to use of non-compatible memory cards in the Hero3.

a. The Hero3 is not sold with a memory card. The Hero3 user manuals state, "The HERO3 camera is compatible with 2GB, 4GB, 8GB, 16GB, 32GB, and 64GB capacity microSD, microSDHC and microDSXC memory cards."

b. The manuals do not specify or endorse any particular brands of memory cards.

c. The manuals do not indicate any particular type of memory cards that must be used in looping mode.

22. When purchasers have attempted to solve problems with the Hero3, either with software updates or by replacing the memory card, these attempts have been ineffective.

23. GoPro offers an express written warranty on the Hero3. The warranty provides in relevant part,

> GoPro products and accessories are guaranteed against manufacturing defects one (1) year from the original date of purchase. GoPro's sole obligation in the event of such defects during this period is to repair or replace the defective part or product with a comparable part or product at GoPro's sole discretion.

24. When individual purchasers inform GoPro regarding Hero3's failures, GoPro has also offered to repair or replace that purchaser's Hero3.

a. To the extent GoPro's customer service is overwhelmed and inadequate to handle the volume of customer complaints as discussed below, the repair/replace process is so burdensome as to be illusory.

b. To the extent GoPro has purportedly repaired purchasers' Hero3s, these repairs are ineffective.

c. To the extent GoPro has replaced purchasers' Hero3s, these replacements continue to have the same failures.

**B. Allegations Regarding Plaintiff Ronald Horton**

25. Plaintiff purchased his GoPro Hero3 Silver from Wine Country Motor Sports on or about August 16, 2013.

26. The primary reason Plaintiff purchased this Hero3 was for in-car motorsports video recording.

27. Plaintiff purchased two (2) different memory cards for use in his Hero3.

28. Plaintiff has observed that his Hero3 unpredictably turns off during recording.

29. Plaintiff has also observed that after placing his Hero3 into looping mode, it has indicated "Not Enough SD Card Space," meaning that the card was unable to record any more video. As a result, when Plaintiff's Hero3 was in looping mode, it did not actually provide continuous video recording, nor did it overwrite older video on the card.

30. Plaintiff has further observed that after power to his Hero3 was interrupted, the clock on the Hero3 no longer functioned properly, assigning the incorrect date and time to his video recordings. As a result, Plaintiff was unable to determine precisely when those recordings occurred.

31. With regard to the above referenced problems, Plaintiff has referred to the manual and has upgraded the software, neither of which has remedied the same. Further, shortly after purchasing the Hero3, Plaintiff contacted GoPro via its website about his problems with the product, but never received a response.[2]

**C. Class Action Allegations**

32. This action is brought and properly maintained as a class action, under Fed. R. Civ. P. 23, on behalf of a Class defined as follows: All individuals or entities residing in the United States and its possessions who purchased GoPro Hero3 cameras.

33. The Class shall not include GoPro, any entity in which GoPro has a controlling interest, or GoPro's agents, assigns, successors, and legal representatives.

34. The Class shall not include any individual or entity that previously commenced a lawsuit against GoPro arising out of the subject matter of this complaint.

35. The Class shall not include the Judge assigned to this case and any member of the Judge's immediate family.

36. The Class is so numerous that individual joinder is impracticable. The actual number of Class members is not precisely known but will likely number in the thousands. GoPro has information that makes it feasible to determine the number of Class members.

---

[2] However, Plaintiff does receive marketing emails from GoPro concerning new videos and product promotions.

37. This complaint presents questions of law and fact that are common to Plaintiff and the Class, and these questions predominate over any issues that may affect individual Class members. These questions include, but are not limited to, the following:

a. Whether the Hero3 properly operates in looping mode and continuously recording video as described in GoPro's marketing, advertising, or product manuals.

b. Whether the Hero3 has a defect that prevents reliable operation of looping mode.

c. Whether the Hero3 has a defect that prevents reliable operation of its internal clock.

d. Whether the Hero3's defects rendered it unsuitable for its reasonable and anticipated uses.

e. Whether GoPro knew or should have known of defects with the Hero3 looping mode feature before making it available for purchase by the Class.

f. Whether GoPro violated legal duties to Plaintiff and the Class through its design, manufacture, marketing, advertising, or sale of the Hero3 to the Class.

g. Whether GoPro violated legal duties to Plaintiff and the Class by failing to notify consumers, or take other appropriate remedial action, regarding the Hero3's defects.

h. Whether GoPro breached implied or express warranties for the Hero3 by selling the Hero3 with defects.

i. Whether the Hero3's express warranty fails of its essential purpose due to GoPro's inability or unwillingness to repair or replace the Hero3 such that its looping mode becomes operational.

j. Whether GoPro made deceptive or misleading representations, through its marketing and advertising, by claiming the Hero3 had a functional looping mode.

38. Plaintiff's claim is typical of the Class in that Plaintiff, like all Class members, purchased a Hero3 with the expectation it would reliably and continuously record video, when in fact the Hero3 did not have a reliably functioning internal clock or looping mode.

39. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained experienced counsel with the necessary expertise and resources to prosecute a class action. Plaintiff and his counsel do not anticipate circumstances where Plaintiff's interests would be adverse to those of the Class.

40. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

a. Because the costs of prosecution would likely surpass individual Class members' damages, it is economically impractical for Class members to pursue individual actions.

b. Without class action, Plaintiff and Class members have no effective remedy to recover their damages. Class action allows Class members to assert their rights while conserving the resources of this Court and the parties.

c. Class action prevents inconsistent judgments from arising out of various individual actions before different courts.

41. Defendant has acted or refused to act on grounds that generally apply to the Class such that final injunctive or declaratory relief is appropriate. These grounds include, but are not limited, to the following:

a. Whether GoPro made deceptive or misleading representations, through its marketing and advertising, by claiming the Hero3 had a functional looping mode.

b. Whether failures of the Hero3's looping mode constituted a manufacturing defect within the meaning of the Hero3's express written warranty.

c. Whether the Hero3's express warranty fails of its essential purpose due to GoPro's inability or unwillingness to repair or replace the Hero3 such that its looping mode or internal clock work reliably.

d. Whether procedures are needed to warn or inform consumers about the functional deficiencies in the Hero3's looping mode.

**CAUSES OF ACTION**

**Count I: Breach of Express Warranty**

42. Plaintiff incorporates by reference the factual allegations in paragraphs 1- 41.

43. GoPro expressly warranted that the Hero3 had specific functional characteristics, including a looping mode. Through these warranties, GoPro intended to induce consumers to purchase the Hero3. When consumers purchased the Hero3, these warranties became part of the basis for the bargain.

44. GoPro expressly warranted that it would repair or replace manufacturing defects in the Hero3. This warranty encompasses the functionality of the Hero3, including the looping mode.

45. GoPro communicated these warranties to ultimate consumers including Plaintiff and Class members.

46. GoPro breached these warranties because, among other defects, the Hero3 does not properly operate in looping mode, does not reliably mark the date and time of video recordings and further unpredictably turns off during recording.

47. GoPro is unwilling or unable to repair or replace the Hero3 such that it reliably records video without defect or interruption. As a result, to the extent GoPro limits its warranties to the repair or replacement of the Hero3, such limitations fail of their essential purpose and are unenforceable.

48. Plaintiff has communicated with GoPro regarding the repair or replacement of his Hero3. GoPro's efforts to repair or replace Plaintiff's Hero3 were ineffective and further efforts to repair or replace it would be futile.

49. Due to GoPro's breach, Plaintiff and Class members suffered damages, including but not limited to the cost of a suitable replacement for the Hero3.

50. Plaintiff and the Class demand judgment against GoPro for damages in an amount to be determined at trial and pray for judgment as set forth below.

**Count II: Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201 et seq.**

51. Plaintiff incorporates by reference the factual allegations in paragraphs 1- 41.

52. Plaintiff and Class members are "consumers" within the meaning of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA).

53. Through its marketing, advertising, and sale of the Hero3, GoPro placed the Hero3 into "trade or commerce" within the meaning of the FDUPTA.

54. GoPro described, marketed, promoted, and sold its Hero3 camera as having a specific and particular capabilities that the camera does not have: (1) ("max looping mode," *see, supra*, ¶¶ 5 and 15) (2) fully functioning time/date stamping (internal clock), and (3) specified run-time capabilities (which are compromised by arbitrary camera shut-offs).

55. Rather than refraining from reference in sales and marketing materials to camera features that the GoPro Hero3 does not actually have, GoPro persisted in inducing unwitting consumers to purchase the GoPro Hero3 camera by promoting features that the GoPro Hero3 camera does not have or has so unreliably and irregularly as to make the marketed feature illusory.

56. When GoPro Hero3 purchasers have identified the missing or non-functioning features to GoPro, rather than admitting to its false statements and offering return of the camera and reimbursement for its cost, GoPro has misinformed Hero3 purchasers.

57. For example, as to the referenced defects, GoPro has explained to purchasers that the failed features are due to defective or improperly formatted third-party SD cards.

58. GoPro's supposed repair for the GoPro Hero3's inherent and irremediable defects (SD card replacement) was an intentionally false and misleading subterfuge devised to draw out the repair process, relying on the lapse of the camera warranty period and/or relying on consumer fatigue to overwhelm consumers' efforts to hold GoPro accountable and responsible for the Hero3's inherent and irremediable problems.

59. In this way, GoPro engaged in unfair, unconscionable, or deceptive practices in violation of the FDUPTA.

60. On January 15, 2013, GoPro Founder and CEO, Nicholas Woodman published a letter on Facebook to the "GoPro Community," in which Goodman admitted to widespread frustration due to software bugs in early production Hero3 cameras.

61. In that same letter on Facebook to the "GoPro Community," Woodman admitted that purchasers of GoPro cameras were having "a very difficult time getting hold of" GoPro with regard to problems with GoPro cameras.

62. Woodman went so far as to write, "There's no excuse for this."

63. To date, Woodman's January 15, 2013 Facebook post has over 1,430 comments.

64. Mr. Andrew Roley's December 10, 2013 is typical. Mr. Roley, an ensign in the U.S. Navy, wrote, "I'm about to return my 3rd Hero 3 Black, I have spent much more time talking to GoPro support than actually recording anything. When can I expect to put my $500 investment in this camera and accessories to reliable use?"

65. In the 1,430 Facebook messages, negative and angry comments out-number positive comments by at least 10:1 with the following common problems described: over-heating cameras, frozen operation, "bricked" operation (completely non-functioning cameras), "skipping" video, and repeated unprompted "shut offs."

66. By selling a product that was known to have numerous defects and flaws and, while at the same time having inadequate capacity to deal with the thousands of unhappy purchasers seeking return or replacement, GoPro devised a scheme whereby the obstacles to consumers for the vindication of their rights constitutes unfair, unconscionable, or deceptive practices in violation of the FDUPTA.

67. Because GoPro makes representations about Hero3's features, but the Hero3 does not perform in accordance with those representations, the camera has diminished value and its

sale and marketing therefore constitute unfair, unconscionable, or deceptive practices in violation of the FDUPTA.

68. As a result of these violations, Plaintiff and Class members suffered damages, including but not limited to the cost of a suitable replacement for the Hero3 or a full refund for the cost of the product (and all related accessories).

69. Upon prevailing on an FDUPTA claim, Plaintiff and Class members are entitled to recover reasonable attorneys' fees.

70. Plaintiff and the Class demand judgment against GoPro for damages in an amount to be determined at trial and pray for judgment as set forth below.

**Count IV: Declaratory and Injunctive Relief**

71. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

72. Plaintiff and the Class seek injunctive and declaratory relief as to the following:

a. Whether GoPro should be enjoined from making deceptive or misleading representations, in its marketing or advertising, regarding the existence or functionality of the Hero3's features.

b. Whether failures of the Hero3's looping mode or internal clock constituted manufacturing defects within the meaning of the Hero3's express written warranty.

c. Whether the Hero3's express warranty fails of its essential purpose due to GoPro's inability or unwillingness to repair or replace the Hero3 such that it has a fully operational looping mode.

d. Whether procedures are needed to warn or inform consumers about the functional deficiencies in the Hero3.

e. Whether procedures are needed to warn or inform consumers about their rights under GoPro's express or implied warranties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays on behalf of himself and all others similarly situated for the following:

1. Pecuniary damages in excess of $5 million.

2. All damages and relief authorized by law or statute, including but not limited to costs and attorney fees.

3. Class certification under Civ. R. Civ. P. 23, with Plaintiff duly appointed as Class representative and Plaintiff's counsel appointed as Class counsel.

4. Injunctive and declaratory relief as necessary to vindicate the rights of Plaintiff and Class members under any applicable warranties and the Florida Deceptive and Unfair Trade Practices Act.

5. Any other relief this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all claims so triable.

[*signature page follows*]

Dated: April 16, 2014

/s/ David Michael Campbell
David Michael Campbell, Fla. Bar No. 650188
CAMPBELL LAW
1861 North Crystal Lake Drive
Lakeland, FL 33801
(863) 292-9929
dmcampbell@campbelllaw.com

Robert K. Shelquist
Scott Moriarity
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
rkshelquist@locklaw.com
samoriarity@locklaw.com

Seth Leventhal
LEVENTHAL PLLC
527 Marquette Avenue South
Minneapolis, MN 55402
(612) 234-7349
seth@levethalpllc.com

Charles LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue
Suite 810
Bethesda, Maryland 20814
Telephone: 202-789-3960
charles@cuneolaw.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 16, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ David Michael Campbell
David Michael Campbell, Fla. Bar No. 650188
CAMPBELL LAW
1861 North Crystal Lake Drive
Lakeland, FL 33801
(863) 292-9929
dmcampbell@campbelllaw.com